The court should vacate the court order and judgment of the district court and remand the case with instruction to dismiss because this case has become moot on appeal. This is a First Amendment ballot access case where the Libertarian Party of Arkansas, a new political party in Arkansas law parlance, challenges Arkansas law that requires a new political party to nominate its candidates for the general election by convention rather than by a party primary. The issue in the case is the timing of the new political party convention. The secretary raises four points on appeal, standing, ripeness, attorney's fees, and whether or not the district court abused its discretion when it failed to give a reason for its denial of the secretary's motion to reconsider. I do not plan on discussing any of those cases, any of those points, although the secretary does not abandon any of them, and I'm happy to answer any questions. But the clerk asked us to be prepared to answer and discuss the mootness issue. I'm going to focus my attention entirely on that unless there are other questions. Mr. Linger submitted a 28-J around March 31st of this year indicating that Arkansas had of 2017, revising Arkansas law, not repealing any part of it, but amending the law. And it is to my great distress that Friends of the Earth and Laidlaw indicates that this court can assume that there is standing without deciding it and move immediately to the mootness issue. Most likely, my understanding of that is what the court intends to do. I will focus my attention then on that issue unless there's other questions. Act 297 does change Arkansas law in three significant respects, all of which were precisely the relief requested by the plaintiffs in this case. Certificates of nomination then are due no later than noon on the date of the preferential primary. The date of the nominating convention must take place no later than noon on the date of the preferential primary. And then the convention can take place as authorized by party rule in any manner at any time, obviating an in-person attendance requirement. Mr. Linger correctly points out that when the legislature passed the bill, that the governor signed it, and it became effective on August 1st, 2017 when no one challenged it in the process in Arkansas that allows for challenge to legislative acts after the legislature concludes. The case is perfectly handled by an Eighth Circuit case, Teague v. Cooper, 720 Federal 3rd, 973, a 2013 case, not cited in our briefs. And I'm happy to provide supplemental briefing if it's required, but it appears pretty clear that it's not. The Teague v. Cooper case concerned a change in school choice law in Arkansas. The school choice law had a provision concerning the racial composition of the school to which the student who wanted to choose school was allocated to abide. It was declared unconstitutional. During the pendency of the appeal, the Arkansas legislature changed the law, eliminating entirely that provision. And this court said in adopting Valero Terrestrial Corporation v. Page, a Fourth Circuit case from 2000, 211 Fed 3rd, 112, statutory changes that discontinue a challenge practice are usually enough to render a case moot. And the normal practice in this circuit, the Eighth Circuit, is that when a case has been rendered moot by events outside the party's control, we vacate the decision of the district court and remand with directions that it be dismissed. Citing Munsingware, U.S. v. Munsingware, a 1950 U.S. Supreme Court case. And it invokes 28 U.S. Code 2106 as the court's power to do so. Given- Doesn't the Supreme Court in the city of Mesquite provide for a narrow exception, say, if there's a likelihood that the old statute will come back or that this statute could be repealed? There is an exception when there is proof in the record, but in this case, there's absolutely no proof of any sort that Arkansas intends to bring this back, and that was addressed in Teague v. Cooper. There is a- that's, I guess, an exception to an exception. And so, the- there's another exception to the normal rule of remand and vacature called the voluntary cessation activity. But we're not there. We're at a different place. This is sheer happenstance because the legislature is different than the secretary, the governor is a different constitutional officer, and this is happenstance according to Eighth Circuit law. No proof in this record that the state intends to bring it back. But even if- Would there be a need to present that kind of proof before the district court? No, Your Honor. I think that would be a different case. I think that would be a different challenge to the new law, saying the new law is not sufficient because the proof- we went to a full trial in this case. There's no proof that Arkansas intended to do this. That was part of our briefing. There's no showing, moreover, that there was, when we're talking about standing, there's no showing that there was actual injury caused by this law. There definitely is not showing of causation caused by this law. Our defense in this case was that the reason these people did not make it to the ballot is that they failed to follow the requirement that the political practices pledge had to be filed during the party filing period. And none of them, not a single one, provided that proof that they tendered their political practices pledge on time. That was the law that prevented them from being on the ballot. So based on the record, no, Your Honor, I do not believe the secretary should have to go back and prove that this cannot be put back into effect. Moreover, if it were put back into effect, there's absolutely no showing that that case wouldn't be reviewable. And if it's reviewable, it's a new case and a new judge should decide the issue. I have nothing further. Very well. Thank you. We would, just one quick question. We would still have to reach the attorney's fees and costs question, would we not? I missed the issue. I'm sorry. If we agree with you that it's moot, would we still have to reach the attorney's fees and costs question? I believe that you vacate and dismiss with no relief sought whatsoever because that's the only way to avoid ancillary litigation about whether or not there is an intention or not an intention. But my understanding of the cases, and Teague v. Cooper in particular, is that you do dismiss, I'm sorry, you remand after vacating and instruct the court to dismiss the case entirely with no relief whatsoever granted. Thank you, Your Honor.    Thank you. Thank you. Thank you.  Mr. Linger, good morning. Good morning, Your Honor. I'd like to, may it please the court, I'm James Linger, a counsel for the Appalese. And I want to apologize. Last night I was hit by some hoarseness and that accounts for the strangeness of my voice. But I hope you can understand what I'm saying and I will try to speak into the microphone. I disagree that this case is moot. And I think, unlike the Arkansas legislature, we should carefully read the new law because it does not do what was done in the Teague case and end the possibility of this coming up again. Because the cases that we have cited have always held in the challenge, whether when you come to new parties or independent candidates, that they should be allowed to campaign and pick their nominees at the same times or more likely after the major parties have selected their nominees. But what did the new law do? Did the Arkansas legislature actually correct the law? No. It was like they were a football team trying to score and they fumbled on the two-yard line and lost the ball. Because when they get there, they did correct the part of 7-7-205 that for new parties required before that the political practices pledges had to be put in after they were nominated. They did correct that. And they did say that you could have a nominating convention on the day of the primary, but they said it had to end at noon. And as we all know, voting usually goes to 7 or 8 o'clock at night. The major party primary candidates are not certified at that time. There may be recounts. You may not know until late at night or the next morning who they have nominated. And in Arkansas, it is one of those states that has a primary runoff three weeks later. So the law that was actually passed that I let the court know on on March 31st, it's like the legislature is trying to see what they can get away with. We still want to know for the major parties who the minor new party is going to nominate. And remember, there was extensive testimony at the trial about how you have to do this. We cited to the court this court's decision in Republican Party of Arkansas v. Faulkner County about how the court was very concerned about the distance you had to go to to vote in Republican primaries. Are you asking us to take a first look at the new law? Isn't that what the district court should do? What I'm saying is the case is not moot because it is capable of repetition, yet a fading review, because the corrective measure that the legislature passed does not allow the party's nominating convention to be at the same time because you have to get the not only can it not be beyond noon on primary day and three weeks before the runoff election, but you have to turn in your certificates of nomination. And unless, since they would turn them in to the Secretary of State or to the county officials, that could take hours or hours. And the point of the matter is that it's obvious that the convention is going to have to be earlier. The election primary days are on Tuesday. The testimony in the court below was in order to get people there because they have jobs, because they have families and children in school, that they would be on a Saturday or Sunday. They even talked then last year when they had an earlier date, they didn't want to do it on Halloween because they afraid they would lose a lot of people who had children. It's obvious that this is just sort of a more apparent than real that they're having an equal presentation here because they have to turn in the certificates of the new party's nominees at noon on primary day. They're going to have to have the convention, nominating convention before that, probably on a Saturday or Sunday. We don't require the major parties at noon to turn in the certificates of nominations. They don't even know who the nominees are going to be at that time. They haven't even finished voting. They've got seven hours or more to vote, to have recounts, to have a runoff election in three weeks. So it's not moot. It's not the same. Remember what the US Supreme Court said in the case of Storer v. Brown back in the early 70s, one of the early cases where they talk about the capable repetition yet evading review and how election cases are exception to the usual mootness. And that is this doctrine should be applied to election statutes when the construction of the statute and understanding of its operation and possible constitutional limits on its application will have the effect of simplifying future challenges and thus increase the likelihood that timely filed cases can be adjudicated in a proper manner. I'm saying that what the legislature did here did not totally correct the problem that was condemned by the district court. They did it partially, but at the end, they seem to be seeing how much they can get away with. I direct this particularly to Judge Wolman. I know, Your Honor, you wrote the decision in April in Moore v. Martin, and you remember there, you would ask a question, Judge Gunder, about whether this might reoccur. If you remember from the Moore v. Martin on the independent deadline in Arkansas, there was extensive history about how an independent deadline in Arkansas will be declared unconstitutional. The legislature would correct it, and then a couple of years later, they'd move the deadline back to an unconstitutional time, and there'd be another case and another case, and this went on and on and on. So there is certainly a possibility, but it's even more so here because the new law does not correct what was condemned there because it doesn't even treat the new party and the old parties equally, and most states that have addressed this, most states don't try to do this. They know you're not supposed to have the new parties and the independent candidates do it before the major parties. But here we had some cases where it comes up, and they usually say that even a lot of us have condemned even if you have it at the same time because new parties and independent candidates are different from old parties, and I cited cases. I think they're in the brief. The Whig Party case, the new party in South Carolina and Alabama, where there they had something that could have been done in this case by the legislature that might have mooted this case because they could have had it so that you could have your convention until at least 7 o'clock at night on primary day and turn in, like I believe it's in the Whig Party cases where they allowed them to turn in the certificates of nomination six days later. Why, when the major parties aren't even going to know who's won and there's going to be recounts and runoffs, why does the party have to turn in certificates of nomination at noon on primary day? And I don't think there's a question there. The trial court here, looking at all the reasons, found there was no justification, and this as it did in the Republican Party of Arkansas v. Faulkner, in equal protection and that sort of thing, the three-pronged test of Anderson v. Celebrezzi and Burdick, wherein they look at the justification of the law and whether it can be done by less drastic means and is it necessary. None of this is necessary unless we look at it from the difference of the Republican and because they want to know in advance who the new party and independent candidates are going to have. They don't want to follow what the Supreme Court says, that people don't look at new party candidates or independent candidates until they find out and become dissatisfied with the major party candidates. But the Republicans and Democrats don't want that. The legislature, I think, in doing this, is still wanting to find out. They know that the new party will have to have a convention before the turn in time at noon on primary day. They'll know that. They'll even have seven hours more voting, a runoff election to maybe influence because in strategy, in politics, oftentimes when you think about which candidate you want your party to pick, you may decide who is the opposition going to be. And that's an advantage. And it's an advantage here that is still given to the major parties. Now, currently, back when Republican Party of Arkansas was decided back in 1995, Arkansas was still heavily dominated by the Democratic Party. And that's why laws were passed then that hurt the Republican Party, which were held unconstitutional. Now, Arkansas is from the governor to the legislature to Congress is almost totally dominated by the Republican Party. But the point is, as has been recognized by the U.S. Supreme Court, that because the interest of minor parties in the candidates are not well represented in the legislatures, the court must give more careful scrutiny to these laws. There was specific testimony in the trial from the chair of the Libertarian Party of Arkansas that they were never consulted when this law was changed. No one talked to them about it, asked them for their input. They just went and did it. When this law was put in, I let the court know on March 31st, there was no consultation. If they had, we might have said something. What are you doing? What do you mean to have our nominee candidacies in at noon? You haven't followed what the judge did. For that reason, I think looking at what other cases said, this is the capable repetition yet evading review exception that applies to election cases. And therefore, I think the court should affirm the decision of the trial court, but make note of the new law. And I think the court could comment in dicta on why the case is not moot, why this can continue on, and why it is not a perfect corrective response to what was condemned below. And the court could even note, referring back to the Moore v. Martin decision of April 26th of this year, which Judge Woolman wrote about the past history in Arkansas, how these laws get passed, they try to correct them, and then they go back and try to get away with something. Here, they didn't wait for a couple years to try to get away with something. They actually did it in the corrective thing, seeing maybe it's just a little difference. Maybe it's only a couple days. Let's see if we can get away with that. So for that reason, I don't think it's moot. I think the case down below was properly decided. It was a concrete injury. There was plenty of testimony by witnesses, particularly the chair of the Libertarian Party of Arkansas, about the difficulty they had, a difficulty that has been recognized by the 8th Circuit, particularly since McLean v. Meyer and other decisions that people in the U.S. Supreme Court, in the Williams v. Anderson case, people do not get particularly interested in elections. When the election is far off, when the primaries are far off, they have other things to do with their life. And trying to put one party or a set of candidates to have a much earlier time puts them at a disadvantage. Let me ask you one quick question. Yes. In the court below, did you propose an alternative scheme that you felt would be constitutional? Yeah. They actually had a convention in February. Now, even that... Well, let me finish. Did the alternative scheme that you proposed, that you represented to the district court, would be constitutional? Is it different than the one that the legislature enacted? Yes. Yes. No, we never. We never proposed any scheme where we would have to have our convention before the primary election. Or, if you assume, which I think is incredibly fanciful, that you could come down there on somewhere from central Arkansas, and they run in, have the convention in the morning, and before they have lunch, they run down the certificate nominations, although some of them have to go to the counties that are 150, 200 miles away to get there and get them in. It's absurd. And we didn't propose that, and only the Arkansas legislature came up with this without consulting us. So, I'm just saying, had they... I think the best thing would actually be to allow them, at least up until the time of the runoff election, most states, and some of the cases we cited, have allowed time after that, because they're not printing the ballots, and there's no reason, there's no necessity by the state, unless they want to advantage the major established parties in requiring new parties to do this so much early. So, no, they didn't follow our advice that we put forward in the court. So, on that basis, and I know it's difficult, and you asked something about attorney fees and something. I think there's been a number of cases on election cases. What the court wants is when you declare something unconstitutional, the more conservative courts want to defer to the legislatures to see that they correct it. But the reason there was a change in the relationship between the party and its members and its potential candidates and the state of Arkansas was because of the decision. And there wouldn't have been even this partial attempt to correct it, but for that decision. So, I think we'd be entitled to that. But I do think the decision deserves to be affirmed with some well-written dicta talking about the new law and why they failed in the end to get it totally corrected and in line with the decisions of the Supreme Court and of this court. Thank you. Thank you. Your Honors, and may it please the court. There was extensive testimony about a proposed remedy in the district court. Judge Malloy, you're exactly correct. This law is precisely what they said to the district court would resolve the constitutional issue. It is to the letter. I do not want to go back for a factual discussion about whether or not someone was or was not consulted. But I will say this. I disagree vehemently about whether or not the Libertarian Party of Arkansas and its counsel had anything to do with this law. I'm stunned to hear that someone would say that they didn't. As Judge Grunder asked you during your opening comments about there is an exception to the mootness doctrine of the likelihood or whether there's any reasonable possibility that the legislature would change the law again. If you go back to the recent case of Martin. Yes, sir. I'm familiar with that case. Excuse me. Moore versus Martin. It sort of chronicles a history of, shall we say, hostility in Arkansas to third parties or new parties, and that the legislature rather routinely amends their statute to try to make it more difficult for third parties or independent parties to get on the ballot. Does that legislative history play into this at all? A couple of different problems. In the analysis of any likelihood that they may continue that hostility, if we want to use that term. No, Your Honor. I don't believe so for this reason, in this type of case. There's no sense and there's no proof of record already that such a case wouldn't be amendable to review. Wouldn't what? Would not be amenable to review in the district court. A proper case coming up with a proper plaintiff or a proper defendant. More than that, though, in this particular case, our entire argument was that this was not a deliberate choice of the legislature. If you go back and look at the legislative history of how it came to be that the law says something to the effect of a nominated candidate shall file a political practices pledge. Look what's not in the law. The old law. Look what's not in the law. And this is directly from Mr. Linger's brief at page 6, citing to 77205C3. A candidate nominated by convention shall file a political practices pledge with the secretary of state or county clerk, as the case may be, during the party filing period. There's nothing in there about a certificate of nomination. And the standard was that certificates of nomination are almost always later. The fact that it said nominated and there was no change in case or change in tense was purely a drafting error corrected by the legislature this time. And I have to disagree with your analysis on a separate note. Moore v. Martin made a specific and explicit argument that independent candidates are separate and distinct from third party candidates. And I agree that they are. There's different lines of cases because they're treated differently. And I understand Judge Wallen did a fantastic job setting forth the history of the previously in control party that managed independent candidates in Arkansas a little bit differently. But there has not been that kind of alleged harm or that kind of history shown in this case. None whatsoever. The contrary is true. The change in the filing period was responsive to something that happened in 2012. I don't want to go into it. You've already had a case about it. Fred Smith v. the secretary of state. There's nine other cases in the district court from the same plaintiff concerning the same issue about third parties and Democrat parties, etc. Suffice it to say, I believe that the record in this case does not support such a contention. And because there's no record evidence, I don't believe on this case that means you should not invoke your and it is an equitable remedy. Vacate your concede is an equitable remedy. And we're asking the court to vacate. I mean, one of the ironies of this case is that Mr. Lininger filed the 28-J letter, which sort of impliedly says that the new statute cured the problem. And you objected to our even considering it. Your Honor, so I thank you very much for bringing up the point that I have failed to make earlier. And I'm going to withdraw our objection on April 10th formally. And I apologize for not getting on this issue earlier. I should have understood and did not understand until the clerk sent us the very nice note last Tuesday that we should address this issue on appeal. And I do not mean to vex the court. I would actually prefer to have a decision on standing because it would help tremendously in subsequent cases. But I realize that Article 3 says you shall not make a decision that you don't have to make. And the mootness issue is live, valid, and requires, I believe, under Teague and Cooper, requires remand with instructions to vacate and dismiss. Why wouldn't they still be entitled to their attorney's fees? I mean, don't they have a pretty good argument that the legislature changed it as a result of their activities in this case? Primarily because this is, as I understand the law, it is because the case was pending and that is not a final adjudication. Consequently, they're not entitled to any relief at all. And the reason it is vacature of the entire decision is to make sure that there is not that same exact type of ancillary litigation over any part of the remedy that was issued. Because, remember, if you leave attorney's fees in place, then you must decide those other issues. Was there standing? Did the court violate its discretion or did it abuse its discretion when it failed to give a reason on its denial of our motion of reconsideration? Is the case ripe or not? All those issues then must be decided. And the whole point, the whole point of vacature is to make sure that no one has to litigate again those same issues. Your Honor, I might add, as an ancillary point, I might add that the way these cases come up, the way Teague and Cooper comes up, and the way Valero and Terrestrial Corp comes up, it is a pretty firm indication that we cannot settle these cases on appeal. We have to litigate and ask you for your intervention. So I urge the court to vacate the entire case. Please do not reserve part of it because, as you know, when there's money at issue, it is not mine. It is the taxpayer's, and I'm obligated to do everything I can to hold on to that and protect it. Thank you for your consideration and attention. I don't know who initiated the issue concerning mootness. I do realize that I mishandled the March 23rd or March 31st letter, but I appreciate the court's consideration and attention. Any further questions? Thank you, and we thank you for the argument. The case is submitted, and we will take it under consideration.